Good morning, Your Honors. Joseph Landau for the petitioner. With the Court's permission, I'd like to reserve two minutes of rebuttal time. All right. Your Honors, and may it please the Court, my client is a homosexual transvestite with a female gender identity who adopts feminine characteristics through wearing makeup and long hair, adopting female mannerisms, wearing women's clothing, and adopting a female name. He was gang raped in his native El Salvador, and he testified to this credibly before an immigration judge. It is clear if he is sent back that he is going to be brutalized as soon as he arrives, and no one is going to lift a finger to help him. Now, the immigration judge below found my client credible. She believed his story with regard to the gang rape that he suffered, and she believed his gender presentation. Nevertheless, she ruled against him on his claim for asylum withholding of removal or relief under the Convention Against Torture, and in doing so, committed three serious legal errors, all the while failing to fully develop the record, which she was particularly charged to do, given that my client appeared before her pro se. Now, these three legal errors, briefly, are that she required that someone in the government or acting on behalf of the government torture my client, which is not the standard of law under the Convention Against Torture. Second, she made no inquiry into the likelihood of future persecution or torture, which is a separate claim under those statutes and regulations and which she is charged to do. And finally, she held that in order for the rape that my client suffered to count under the asylum laws, it would have to be reported to someone in the government or to a family member. Now, with regard to the first error of law, she held, and I quote, that the torture convention requires that someone in the government or acting on behalf of the government torture the respondent. Let's assume that as we read the Convention Against Torture and we try to match that up with the language, we conclude that there was an error of law in terms of the standard employed. Okay. Would the remedy then be a remand so that the I.J. or the BIA, then determined back to the I.J., presumably, would assess this under the correct standard? Well, Your Honor, I think this Court can reverse this case, given the materials that were in the record. Nevertheless, in the alternate, we ask that you remand so that that appropriate standard could be applied. Let me ask a different question. The first two of your issues relate to the Convention Against Torture. The third one, I think, includes the asylum, which has another issue, which we'll have to reach with respect to the one-year limitation. One of the issues you raise, which is an interesting one, is you had the record in front of the I.J., and then you had a heap of materials that got presented to the BIA. And under the streamlining procedures, the decision of the I.J. is the decision that we're reviewing. So, but I'm curious as to whether if you submit something to the BIA, that's now still part of the record. And I know there's been this argument about it, but in the context of this unusual streamlining, how do you get stuff in front of the BIA if they decide to streamline? And what's your best authority for saying it's now, quote, part of the record? Well, with respect to the question whether it – how exactly it happens, I mean, you obviously just submit the materials as best as you can. There's two procedures for that. We know that you can – you know, in the normal course, before we had streamlining, it was no issue because we knew what the record was. Now, in the streamlining, I think we're a little less sure. With regard to the particular question about under the streamlining procedure exactly how does the Board take administrative notice of these things, you said – you asked me what's my best authority. I actually am not aware of any authority that specifically treats this particular question under the streamlining regulations. Nevertheless, there are numerous cases, many of which we cite in our brief and others of which I would be happy to give you right now, where it's made clear that the agency can take administrative notice over these kinds of materials. Now, under the circumstances, given the fact that the agency is charged both with fully developing the record and responding to the arguments that are made to them, it seems to me essential that there be a way for these materials to be submitted. And it seems to me essential that when these materials are submitted, particularly in a context like this where the – where my client was pro se before the immigration judge, it seems to me essential that there be a mechanism wherein the Board of Immigration Appeals looks at these materials. I suppose one way to do it – I mean, one procedural way to look at it would be to say they were in front of the BIA, but in streamlining, the BIA just says, in effect, the IJ's decision is the decision that I adopt. I, the one judge, BIA. And so the record is what the record is, including the new materials, and the decision is the IJ's. But an alternate way to look at it is if they adopt the IJ's decision, then they've implicitly rejected everything you submitted. Where do either of those – maybe there's a third option. I haven't thought of it. I'm just trying to analytically put this into a framework. Well, analytically, I think that they did reject the materials that were submitted. They made absolutely no mention of it. I mean, they said absolutely nothing. They simply said affirmed without opinion. So with respect to that issue, I think that they were entirely ignored. Now, of course, we also submitted materials on a motion to remand because those materials had been new and previously unavailable. So that's an additional mechanism. But in the context of commonly known facts, the regulations make clear that those are not materials that need to be submitted on a motion to remand. They're materials that the BIA can simply take administrative notice of. So with respect to your question, Your Honor, the board simply took absolutely no notice of them at all, made no mention of them. Counsel, do we know that the BIA did not consider them? We don't know the answer to that question. What standard of review, then, are we to judge the question of their consideration or not of those materials? That would be an abuse of discretion standard. Okay. So now, is it an abuse? So how do we know? What's your best argument, then, for suggesting that BIA has abused its discretion since the record doesn't show or shows only that the BIA didn't say that it was taking into account these materials and the presumption under the BIA's regulations are that it will not consider additional materials unless there's some kind of a showing? Well, the act of not considering materials at all, especially in a severe situation like this, to me certainly is arbitrary and contrary to the law, which is that the BIA can take administrative notice of these things. But this circuit has held that when an agency does not give a clear reason as to why it affirms a decision by an immigration judge, when the BIA doesn't make clear its reasons for affirming, it risks reversal on appeal. That's actually a quote from a case from this circuit. So in asking exactly – in asking the question how we are to judge this, it seems to me that the fact that there's no reason here, we have no idea why, is enough under the established precedent to send it back. You know, we're kind of in this like catch-22 where we don't know if it's in, we don't know if it's out. If it's in the record, wouldn't they simply still say, you know, this is part of the record and I adopt the IJ, everything that I need is right there? I see that my eight minutes may have just answered this. Certainly, it seems that they could do that. They could bifurcate the issue, adopt the decision of the IJ, and still say that they're taking notice of these materials so that on appeal or however procedurally the case were dealt with from then on, they would at a minimum be part of the record and could be considered. I think that's essential here. The country reports that were submitted make clear the very serious threat that my client faces if he is sent back. Thank you. Thank you. We'll give you some time for rebuttal. Thank you, Your Honor. May it please the Court, Brian Boyle for the government. Good morning. Good morning. The way the case was presented just a moment ago was not the case that was presented before the IJ. The – what you heard now was a case of a homosexual with a female sexual identity, somebody who says he thinks and acts like a woman. There's a wealth of nongovernmental material in the record that was submitted on appeal. The claim appears to me to be a claim of a pattern and practice of persecution in Latin America at large against such individuals such that I suppose if the argument were accepted, every – as the Petitioner described it, every effeminate homosexual with a female sexual identity from Latin America would be entitled to refugee status here. Now, the reason I think that case isn't properly before the Court is because there were appropriate procedures to enlarge the record. The case before the IJ was a case involving a homosexual. There was obviously testimony that he was a transvestite. Also in the record was the fact that he had multiple prostitution convictions spanning 17 years. The case was largely based on an allegation of past persecution. I'll talk about that in a moment. But the way the Petitioner needed to proceed is the way in fact he proceeded. He filed a motion of remand. And one of the things I want to emphasize is that motion was reasonably denied by the Board of Immigration Appeals because none of the information that the Petitioners bring forward was unavailable at the time of the proceeding before the immigration judge. None of it. Save and except for the 2003 State Department country report for El Salvador, which I will concede may have been the proper subject of administrative notice. And so the Board of Immigration Appeals denied the motion to remand, saying that the fact that Petitioner got lawyers on appeal was not a fact that rendered the information unavailable before. Let me quote from 8 CFR section 1003.1. I think I've got this right. D3, Little Roman 4. This addresses the point that Petitioner's counsel made about the BIA being a proper venue for fact-finding. That is not the procedure any longer in the light of streamlining. Let me quote. Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in fact-finding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further fact-finding must file a motion for remand. Those are the rules. And we know that Petitioners understood those rules because there was a remand motion. It was reasonably denied, and I think I've emphasized it before, there was no objection, no point of error taken to the denial of the motion to remand on appeal. Mr. Boyle, on the BIA's order, that second paragraph is the denial of the motion to remand the record for consideration of additional evidence. Now, I'm just a little confused. I understand that the Petitioner submitted four additional documents together with his brief. And then there was a packet of some 17 additional documents. Now, does this motion to remand, did that cover all 21 of those documents or just four or just 17? What did it cover? It covered four, the documents that were appended to the motion to remand, the expert report, additional testimony from Petitioner, a couple of things I can't recall right now. Then there were 17 prints of Web pages and other material that were attached. Where was the 2003 Department of State country report? Was that in the four or in the 17? I think that was in the four, but I'd have to check. Okay. But you're suggesting that this motion to remand only extended to the four documents appended to the brief. Correct. How did the 17 documents come before the Board then? What was the mechanism for presenting them to the Board? I don't think they were properly before the Board, but they were simply attached to the appellate brief. Remind us, in the appellate brief, do they reference that they're bringing new evidence or new legal argument to the Board that wasn't before the IJ? I think it was a bid for, quote, unquote, administrative notice. So let me ask you, you know, you might be right in terms of the way you describe what is and isn't before the Board, but what if we, can we figure that out? Do you see what I'm saying? What I'm saying is we don't know. This stuff went to the Board in the brief. So it is part of the record to some extent. Part of their record. Well, it's part of an official record, whether it's an admissible record is another question. If it's part of some record in the BIA, it's because it's physically there. Okay? Do you agree with that? It is physically in the record. It is physically in the record. In the same sense that it would have been had they dropped that stuff on this one. Well, it's like an offer of proof. Yeah. It's there. It's there. So what we don't know is whether the BIA basically declined to take note of it because it's improper in nature and procedure, or whether they looked at it and said it doesn't matter to us because really the IJ, you know, everything is there in the IJ's report and that's enough to base the Don Iyal on. So I guess my question is, should we try to figure this out? Should we? Yes. It goes back. Okay. And tell us why we should figure it out and under what statute do you think we can best figure it out? I don't want to seem like I'm – I don't want to get in a situation where we're like parsing scripture. It seems to me that we're not. Well, we are a little bit because it's all these little rules that we have to – Understood. But it's clear after streamlining that the BIA does not engage in fact finding. They won't do it. They won't take additional evidence except for narrow categories of so-called administrative notice. I think it's quite clear that the material that the petitioner offered, basically prints of web pages from nongovernmental organizations reporting on facts that were not widely publicized at current events, not the sorts of things that would be the proper subject of administrative notice, just as they wouldn't be the proper subject of judicial notice here. And so the – I think when the Board said in denying the motion to remand, we're not going to look at new evidence here because none of this stuff is new. And the fact that you have now got a lawyer, which is – which is great, doesn't mean that the information was unavailable at the time the hearing took place before the immigration judge. I mean, it's going to be – Well, let me say it. So the – under the streamlining, the BIA certainly can take administrative notice. They can if something like the State Department kind of reported. The normal things that they have been taking. I think it says official documents. Administrative notice of. So if we accept counsel's argument that these materials were entirely ignored, I guess we could say, well, that's tantamount to a denial of administrative notice, and we can figure out as a matter of law whether that's an abuse. I think what that would do, though, if that were the rule, I think what you would find in every appellate brief before the BIA to get around streamlining and to force a fresh evaluation of the case having nothing to do with what was put before the IJ. You would have a mountain of additional material. If that's what it's – all that's necessary to do to get around streamlining, that's what's going to happen. And so I would submit. Well, so how do we decide – if you think we decide it as a matter of law, don't we have to say, well, they stuck it onto their brief, and the BIA didn't consider it, and that was an abuse? Well, what the BIA did legally was decline to take administrative notice of these materials. Well, that's what I'm saying. In the sense that the case was streamlined and they relied on the IJ opinion. Right. So wouldn't we have to then say, was that an abuse of discretion? Okay. Well, then what's the point? And the answer would be no in your view. Obviously not. In the case of these materials, prints of webpages of nongovernmental organizations, they're not a proper subject of administrative notice according to the regulation. They wouldn't be a proper subject of judicial notice here. But if you set up a rule whereby if the petitioner lobs in new stuff on appeal to the board, that requires some individualized extensive attention to the new material. The board must focus on that. It's going to defeat the streamlined approach. And now I've burned up all but 40 seconds of my time. Well, that's okay, because the reason this is important is that, you know, we're getting cases at a rate exceeding 100 a week in the immigration field. And so when you say we shouldn't parse things, actually that's what we have to do every day when we try to figure out where does everybody land in these regulations. And you make a good argument as to what the practical consequence would be. So I am actually interested, so I'm going to take a little more of your time if you don't mind. With the Court's intelligence help. I'm just trying to understand. And so what you're saying is that this would really be in contravention of the letter, if not the spirit of the streamlining regulations, to make a rule where we on appeal are looking at piles of attachments. You know, unless what you're looking for is simply the fact, is a notation by the Board of Immigration Appeals that this material isn't appropriate for administrative notice. Is or isn't. Is not. I mean, if you were looking just for that, I suppose my parade of horribles wouldn't be quite so lengthy. But, you know, I think, in fact, the idea behind streamlining is to allow a single judge to take a look at the file and satisfy him or herself that the immigration judge behaved appropriately, there aren't any new issues here. And if you have a rule in which the mere incorporation of additional issues, additional quasi-evidentiary material in the appellate brief is going to require that specific material to be addressed and reviewed for abuse of discretion, it seems to me that the streamlining process is at end. Can I address a little bit of the substance and add? We have a few briefs in mind, and unless there's specific questions on the convention against the Germany. More interesting, the procedure is actually more interesting. That is an easier issue to look at from the brief, so I don't think you need to address it. I think we are interested in the procedure. Are there any other questions? Just on the procedure. Let me say one. Can I say one final observation? Please. Make one final observation. I just want to remind the Court of Ventura. I'm sure it's fresh in the Court's mind. Our memory is not that sharp. A couple of issues here. If there's going to be a pronouncement based on this appellate case, not the case before the adjutant, but based on the appellate case, that there's a pattern and practice of persecution against effeminate homosexuals or female sexual identities throughout Latin America, I think that's something that ought to be addressed by the Board first. I don't – I can't think of a – frankly, I can't think of a pattern and practice finding like that with respect to any group. I'm thinking of the passage from Cotas likening that kind of persecution to what happened to the Jews in the Holocaust. But in any event, there's a separate issue, a separate Ventura issue, and that's the question whether there was eligibility for withholding removal by reason of this individual's multiple prosecution convictions, whether that qualifies as a particular serious crime. I think, in fairness, that would have to be reviewed by the Board first. Thanks very much. I appreciate the indulgence. Thank you. Well, you used up your time. We gave the government a little extra as well. So we'll give you a minute for rebuttal. Thank you. First of all, I think there's an important difference between an abuse of discretion and no discretion. When the Board makes absolutely no comment to the materials that were before it, it is – it exercises no discretion at all. And in that sense, this is not something that can be allowed to remain. With respect to the issue – Well, why can't that be an exercise of discretion? Well, again – The Board evidently – do you dispute that the Board addressed this? It does mention these documents, and it's – apparently. There's some question I asked Mr. Boyle about that. Maybe I could answer that question first. There were four documents that were submitted as part of a motion to remand. Then there were a larger number of documents which were submitted directly with the brief that we asked the Board to take administrative notice of. The items in the motion to remand were specifically put in that – in that way because they were new and previously unavailable. Now, the items that were submitted with the brief that were not part of the motion to remand were done that way because they were commonly known facts. Now, it was – the government has argued that these are just print-out-of-Web reports. Well, let's just say they were commonly known facts, but the BIA doesn't engage in fact-finding. So it's kind of like putting them on deaf ears at that level, isn't it? I don't think so. The – the – But you have submitted those documents to us initially? I mean, could they have come in to – to us today? And what would you – if you had added additional – there's additional stuff that we didn't get before the BIA. We'd like you to take a look at that. No, we wouldn't submit that to you, Your Honor, because you're reviewing the order of removal here and all of the materials up to that point. However, the Board can take notice of those facts the same way a trial court can take notice of commonly known facts. And evidently – evidently it chose not to. We know that because we have a Board's order affirming the I.J. and adopting the I.J.'s order as its own. We don't – we don't know what the Board did. We have no opinion into that. We know that they rejected the motion to remand. But we have no idea. Which were – which were the new documents that – that the I.J. had not considered. So we do have the – the – they have at least addressed that and addressed that squarely. That's correct. But the – the items that were before the BIA are – are not just print-out-of-Web reports. There's a congressional statute in there. There's – there are – But these were all materials that were available – that would have been available at the time that the case was presented to the I.J.? Not all, Your Honor, but – but yes, most. Yes. How do you respond to the government's argument that if they allow the procedure that you're suggesting here, that there will be a – essentially it undermines the streamlining procedure that's in effect? I don't think – Okay. I don't think the point is to undermine the streamlining procedure, Your Honor. I think the point is to be able to make sure that the agency understands the decision that it's making before it makes that decision. Adding documents to a brief, asking the agency to take notice of those documents, isn't trying to do an end run around the entire streamlining procedure. If the BIA wants, it can send the case back to the I.J. But you asked that, and that was denied. It was denied with respect to the motion to remand. With respect to the – to the actual application for asylum withholding and removal and torture convention relief, which we haven't spent much time talking about, and I do think there are serious legal errors here, we – we simply got a flat affirmance without opinion. So on that, again, we don't know – we don't know the reason why the Board did what it did, and there's – But you do. It's set out in the I.J.'s decision. The Board has set out the I.J.'s decision as its own. So that – that has now become the decision of the – of the BIA. So like it or not, we know what that judge was thinking. The thinking was, I adopt this decision. So, I mean, the question is, in your brief, did you say we're attaching all this and we want you to send it back? No. The brief says we're attaching all this and we want you to take administrative notice of it. Okay. All right. Thank you very much. Thank you. The case of Reyes vs. Ashcroft is submitted, and the remainder of our cases this morning are submitted on the brief, so we will adjourn. Thank you.
judges: McKeown, Bybee, Breyer